DAVID J. ROWELL, in equity, *vs.* WESTON LEWIS and others.

Kennebec.    Opinion February 25, 1901.

*Conditional Sales.   Record.   Assignment.   Services and  Commissions.   R. S.,
c. 111, § 5; Stat. 1895, c. 32.*

1.   The assignee, under a common law assignment for the benefit of creditors, of " the property of, or belonging to " his assignor is not within the purview of R. S., ch. 111, § 5, as amended by ch. 32 of Public Laws of 1895, requiring the written instrument of a conditional sale to be recorded in the town in which the purchaser resides.   He occupies no better position than his assignor did.

2.   When, pending litigation to determine the ownership of logs, the parties agree that the party in possession may use them in his business, and that the proceeds shall be held as the logs themselves to await the decision of the court, but made no provision for compensation for the manufacture and sale, the court, even in equity, cannot add such a provision and decree any compensation therefor.

Bill in equity, heard on report.    Bill sustained.

The parties submitted the case upon an agreed statement of facts which will be found in the opinion.

*S. & L. Titcomb,* for plaintiff.

Statute of assignments has been repealed. *Smith* v. *Sullivan,* 71 Maine, 150; *Pleasant Hill Cemetery* v. *Davis,* 76 Maine, 289. Assignees' rights at common law. Counsel cited: Burrill on Assignments, c. 32, p. 538, § 391, and cases; Jones Chat. Mtges. § 241, and cases; 3 Am. & Eng. Encly. 2d. ed. p. 46, and cases; *Newbert* v. *Fletcher,* 84 Maine, 408, and cases; *Sawyer* v. *Long,* 86 Maine, 541. No record required. R. S., c. 111, and Freeman's Supplement, p. 467.

There must have been an acceptance of the assignment by creditors whose debts are equal at least to the assets. *Carr* v. *Dole,* 17 Maine, 358; *Whitney* v. *Kelley,* 67 Maine, 377; *May* v. *Wannemacher,* 111 Mass. 207.

*M. S. Holway,* for defendants.

The agreement is an attempt to establish a lien by contract after surrender of possession, and should be construed as a mortgage requiring to be recorded. *Oakes* v. *Moore,* 24 Maine, 214. It is not valid, except between the parties, unless recorded. R. S., c. 111, § 5; Stat. 1895, c. 32. No decisions in Maine or Mass. and courts are disposed to limit the general rule that assignees take subject to liens and equities. Jones, Mtges. § 244; *Clark* v. *Flint,* 22 Pick. 231. The claim of Moses, the principal creditor joining in the assignment, was more than the assets.

SITTING: WISWELL, C, J., EMERY, WHITEHOUSE, STROUT, SAVAGE, FOGLER, J J.

EMERY, J. The plaintiff bargained in writing certain logs of his to the Richards Paper Company and in the writing stipulated to deliver the logs, but to retain the title to them until all the notes of the company given for the price were paid in full. He delivered the logs, but did not record in any town the writing containing the above stipulations. After the Richards Paper Company received the logs into its possession, but before the payment of any of its notes given therefor, it made a common law assignment of all its property to the defendants for the benefit of its creditors. The

question raised is, whether the defendants, as such assignees, have acquired the title to these logs without payment for them, notwithstanding the express stipulation in the contract of sale that the title should remain in the plaintiff until full payment was actually made.

The defendants claim that the plaintiff has lost his title as against them by his neglect to record, in the proper registry, the written instrument of sale, as required by chap. 32 of Public Laws of 1895 (amendatory of R. S., Ch. 111, § 5) which enacts that such a stipulation shall be in writing and "shall not be valid, except as between the original parties thereto, unless it is recorded in the office of the clerk of the town in which the purchaser resides at the time of the purchase."

It should be noted, at the outset, that the defendants' only title is by virtue of a common law assignment unaided by any statutes of insolvency or bankruptcy. Their assignment is also unaided by any provisions in the old statute relating to assignments for the benefit of creditors, since that statute was repealed by the subsequent insolvency statutes. The defendants, therefore, cannot invoke any of the titles or powers conferred by statute upon assignees in bankruptcy, or insolvency, or other statutory assignment. This excludes from our consideration in this case all the decisions of this or other courts as to the statutory titles and powers of assignees.

It should be further noted, that the instrument of assignment does not purport to convey or transfer the logs, nor does it purport to convey or transfer any articles in the possession of the assignor. It purports to convey and transfer only "the real estate and personal property of, or belonging to", the assignor, the Richards Paper company. Whatever articles were not the "property of" the assignor, or did not "belong to" it, are not embraced in the assignment even though they were in the assignor's possession. The defendants, therefore, have no title to these logs as purchasers, or as the agents of creditors taking security upon the logs; hence they cannot successfully invoke the protection afforded by the registry statues to purchasers and creditors.

In fine, these defendants, whose only claim is under this assign-

ment, are not within the protection of the statute of 1895 ch. 32 above quoted. They are not new parties as to these logs. They are not purchasers for value. *State v. Patten*, 49 Maine, 383. They merely represent the Richards Paper Company. They are its representatives, or its agents or trustees, rather than its grantees or assignees. They cannot, as such assignees, hold the unmatured negotiable paper of the assignor free from equities, though it was formally indorsed to them before maturity and without notice. *Billings v. Collins*, 44 Maine, 271. As said by Mr. Justice Story in *Winsor v. McLellan*, 2 Story, 492: "The principle has long been established that the assignee in bankruptcy does not stand in the position of a purchaser, nor even in so favorable a position as an individual creditor may stand. The assignee in bankruptcy takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition as the bankrupt himself held it, and subject to all the equities which exist against the same in the hands of the bankrupt." The same views are expressed as to assignees in insolvency in *Hutchinson v. Murchie*, 74 Maine, 187, and *Williamson v. Nealey*, 81 Maine 447. Certainly, assignees under a naked common law assignment of only property belonging to the debtor do not occupy any better position. They practically become "original parties" by substitution. We do not find that the statutes requiring such contracts as this to be recorded have ever been considered, even in argument, as affording protection to others than purchasers and attaching creditors. Chief Justice PETERS only voiced the general understanding, when he said, in *Field v. Gellerson*, 80 Maine, 273: "The statute R. S., 111, § 5, requires such notes [Holmes notes] to be recorded in order to be effectual against attachers and after-purchasers."

We find no case where this precise question has been decided under similar facts. Analogous cases, however, are those of unrecorded mortgages of chattels. These are usually required to be recorded, and the question has arisen whether the assignee under a common law assignment for the benefit of creditors without notice of the mortgage can hold the mortgaged property against the mortgagee. The Rhode Island statute provided that no mortgage of

personal property should be valid against any other persons than the parties thereto, unless recorded, etc. The court held that an unrecorded mortgage was valid against the mortgagor's assignee for the benefit of creditors without notice. *Wilson v. Esten*, 14 R. I. 621. In New Jersey the statute provided that unrecorded mortgages should "be absolutely void as against the creditors of the mortgagors, and as against subsequent purchasers and mortgagees in good faith," unless recorded, etc. The court held that an unrecorded mortgage was valid against the mortgagor's assignee for the benefit of creditors. *Shaw v. Glen*, 37 N. J. Eq. 32. It was held in *Van Heusen v. Radcliff*, 17 N. Y. 580, that an assignee for the benefit of creditors could not impeach for want of record a mortgage given by the assignor, though the statute required the mortgage to be recorded as a protection to creditors. The same was held in *Stewart v. Platt*, 101 U. S. 731, though the statute expressly declared that the mortgage should "be absolutely void as against the creditors of the mortgagor" unless recorded, etc. The language of the court in that case, on page 739, seems applicable here : "The assignee can assert in behalf of the general creditors no claim to the proceeds of the sale of the (mortgaged) property which the bankrupts themselves could not have asserted in a contest exclusively between them and their mortgagee." The case of *Adams v. Lee*, 64 N. H. 421, may also be cited. In that case it was held that an assignee in insolvency could not impeach a lien reserved on personal property sold conditionally, although it was not recorded as required by statute.

The defendants urge that one or more creditors had become parties to this assignment before the plaintiff undertook to resume possession of the logs. We do not see how that circumstance affects the question. Assenting creditors do not become purchasers or attaching creditors. They acquire no more than the assignees acquire.

The necessary conclusion is manifest, that these defendants cannot hold the logs without paying for them, notwithstanding the vendor's omission to record his stipulation for retaining title.

When the plaintiff, after the assignment, undertook to regain

possession of the logs, the assignees desired to use the logs in the continuation of the business of making pulp-paper stock. Whereupon the parties made a written agreement that the assignees should retain possession and consume the logs in the business, and retain the proceeds in their hands, "said money in their hands to be regarded as the logs themselves and to be disposed of by said assignees in accordance with the decision of the court" in this suit. The defendants now urge that, in case the court finds the logs to belong to the plaintiff, it will allow them out of the proceeds of the logs a reasonable sum for caring for the property, or a commission on the proceeds in their hands. This, however, was a matter for contract between the parties. The plaintiff was entitled to the full agreed price for the logs, or to the logs themselves. The defendant desired to retain the logs and appropriate them in their business without first making payment for them, and in order to obtain that concession, agreed "to keep a true and strict account of all the logs so used," and hold the amount as a separate fund, to await the judgment of the court. They also stipulated that the money value of the logs should "be regarded as the logs themselves." They did not stipulate, however, for any compensation or commission to be paid them by the plaintiff, and the court cannot add such a stipulation to their agreement. It must be presumed that the advantage to the business of having these logs to use at once was sufficient consideration for their undertaking. The plaintiff is entitled to payment of the agreed price in full with interest up to the money value of the logs in the hands of the defendants without deduction for services or commissions of the defendants. He cannot, however, under his contract with the defendants recover of them anything more than has come to their hands. Unless the amount of what has come to their hands under the contract can be agreed upon, a master must be appointed to ascertain that amount.

*Bill sustained with costs.*